1  KAMALA D. HARRIS
   Attorney General of California
2  SUSAN E. SLAGER
   Supervising Deputy Attorney General
3  VANESSA W. MOTT
   Deputy Attorney General
4  State Bar No. 184606
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone: (916) 445-4979
    Fax: (916) 324-5567
7   E-mail: Vanessa.Mott@doj.ca.gov
   *Attorneys for Defendants*
8  *Department of Corrections & Rehabilitation*
   *and Donnie Alexander*

9

                IN THE UNITED STATES DISTRICT COURT
10
              FOR THE EASTERN DISTRICT OF CALIFORNIA
11

12

13  **ORALEE WOODSON,**                    Case No. 2:15-cv-01206-MCE-CKD

14                          Plaintiff,

15       v.                               **DEFENDANTS' MOTION TO DISMISS
                                          PURSUANT TO FEDERAL RULE OF
16                                        CIVIL PROCEDURE 12(b)(6) [Second]**
    **STATE OF CALIFORNIA; CALIFORNIA
17  DEPARTMENT OF CORRECTIONS &
    REHABILITATION; DEPARTMENT OF
18  YOUTH AUTHORITY; DIVISION OF          Date:      May 5, 2016
    JUVENILE JUSTICE; DONNIE              Time:      2:00 p.m.
19  ALEXANDER DOE 1; DOE 2; DOE 3;        Dept:      7
    DOE 4; DOES 5-25,**                   Judge:     Morrison C. England
20                                        Trial Date: N/A
                           Defendants.    Action Filed: February 27, 2015
21

22

23

24

25

26

27

28

                                                                       **MTD PURSUANT TO FRCP 12(b)(6) [Second]** (2:15-cv-01206-MCE-CKD)

1

# TABLE OF CONTENTS

2

**Page**

3

Introduction ........................................................................................................ 1

4

Summary of Alleged Facts ................................................................................ 2

    I.     Allegations from original complaint filed on February 27, 2015 .......... 2

5

    II.    New factual allegations from February 28, 2016 FAC regarding  the alleged "employment" claims ............................................................... 3

6

    III.   Allegations from original complaint filed on February 27, 2015 .......... 4

7

    IV.   New factual allegations from February 28, 2016 FAC pertaining to defamation .............................................................................................. 4

8

Legal Standard for Motion to Dismiss .............................................................. 5

9

Argument ........................................................................................................... 5

10

    I.     Plaintiff was not an employee for purposes of FEHA or Title VII. ....... 5

11

         A.    Because Plaintiff still has not alleged she received "substantial benefits," Plaintiff's FEHA claims must be dismissed ............................ 5

12

             1.     Plaintiff was an Uncompensated Volunteer ................... 5

13

             2.     Even if AB 1443 were retroactive (which it is not), Plaintiff's FEHA claims are not viable because the Foster Grandparent Program preempts California state law on the issue of whether Plaintiff was an "Employee" ................................ 6

14

15

             3.     Plaintiff's new allegations do not "save" her FEHA claims .......... 8

16

         B.    The Title VII claim must also be dismissed as a matter of law ................ 9

17

    II.    Plaintiff's claim for defamation must be dismissed as to both Defendants CDCR and Alexander ......................................................... 9

18

         A.    Plaintiff still has not pled defamation properly ......................................... 9

19

         B.    Plaintiff has not complied with the government tort claims act against Defendant Alexander ......................................................... 10

20

    III.   Section 1981 does not apply because there is no contract because Plaintiff was either employed via statute as a California civil servant or as a federal volunteer also pursuant to statute ......................................................... 11

21

22

    IV.   Defendant Alexander should be dismissed from this case entirely because Plaintiff's breach of contract claim is against CDCR, not Defendant Donnie Alexander ...................................................................................... 12

23

Conclusion ........................................................................................................ 13

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

C<small>ASES</small>

5

*Arnold v. Tiffany*

6
   359 F.Supp. 1034 (C.D. Cal. 1973) .......................................................................11

7

*Bell Atlantic Corp v. Twombly (Twombly)*
   550 U.S. 544 (2007)..........................................................................................................5

8

*Broughton v. Cutter Labs.*

9
   622 F.2d 458 (9th Cir. 1980)..........................................................................................5

10

*Community Action Program of Evansville v. Veeck*

11
   756 N.E.2d 1079 (Ind.Ct.App.2001)........................................................................6, 7

12

*Crosby v. National Foreign Trade Council*
   (2000) 530 U.S. 363 ......................................................................................................6

13

*Domino's Pizza, Inc. v. McDonald*

14
   126 S.Ct. 1246 (2006) ...................................................................................................12

15

*Farias v. Nat'l R.R. Passenger Corp.*
   No. SACV150633DOCAJWX, 2015 WL 4749002 (C.D. Cal. Aug. 11, 2015)......6

16

17

*Freightliner Corp. v. Myrick*
   514 U.S. 280 (1995).......................................................................................................6

18

*Kahn v. Bower*

19
   (1991) 232 Cal.App.3d 1599........................................................................................9

20

*Kemmerer v. County of Fresno*
   200 Cal. App. 3d 1426 (1988).....................................................................................11

21

22

*Maryland v. Louisiana*
   451 U.S. 725 (1981).......................................................................................................6

23

*Mendoza v. Town of Ross*

24
   128 Cal.App.4th 625 (2005)......................................................................................1, 5

25

*Miller v. State of California*
   18 Cal.3d 808 (1977) ...................................................................................................12

26

*Murray State College v, Akins*

27
   794 P.2d 1218 (Okla.App. 1990) .................................................................................7

28

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*Murray v. National Broadcasting Co.*
844 F.2d 944 (2d Cir. 1988)............................................................................11

*Okun v. Superior Court*
(1981) 29 Cal.3d 442 (1981).........................................................................9, 10

*Patterson v. Mclean Credit Union*
491 U.S. 164 (1989)........................................................................................11

*Price v. Stossel*
620 F. 3d 992 (9th Cir. 2010)............................................................................9

*Robomatic, Inc., v. Vetco Offshore*
225 Cal.App.3d 270 (1990)............................................................................10

*Runyon v. McCrary*
96 S.Ct. 2586 (1976) (Section 1981 does not prohibit sex or religion
discrimination) ...............................................................................................12

*Scott v. Solano County Health and Social Services Dept.*
459 F.Supp.2d 959 (E.D. Cal. 2006)..............................................................10

*Shepard v. Loyola Marymount Univ.*
102 Cal.App.4th 837 (2002)..............................................................................1

*State of California v. Superior Court* (*Bodde*)
(2004) 32 Cal.4th 1234 ..................................................................................10

*United States v. Connors*
634 F.Supp. 484 (S.D.Ohio 1985) ....................................................................7

*Valenzuela v. State of California*
194 Cal.App.3d 916 (1987)............................................................................12

**STATUTES**

42 U.S.C.
§ 1981...........................................................................................................11, 12
§ 1981(a).........................................................................................................11
§ 1981(b).........................................................................................................11
§ 1981 subd. (b) ..............................................................................................11
§ 2000e(f)..........................................................................................................9
§ 5044(a)............................................................................................................7
§ 5044(b)............................................................................................................8

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3
California Civil Code
    § 47................................................................................................................13
4
    § 47(c) ..........................................................................................................10
5
California Government Code
6
    § 12940(a) .....................................................................................................5
7
**CONSTITUTIONAL PROVISIONS**
8
U.S. Constitution
    Article VI .....................................................................................................6
9
10
**COURT RULES**
11
Federal Rule of Civil Procedure
    12 (b)(6) ........................................................................................................5
12
    12(c) ........................................................................................................1, 3, 8
    subd. 12(b)(6) ...............................................................................................5
13
14
**OTHER AUTHORITIES**
15
2 California Code of Regulations
    §11008(b) ......................................................................................................5
16
45 Code of Federal Regulations
17
    § 2552.45 (2009) ...................................................................................1, 3, 6, 9
    § 2552.46) .....................................................................................................3
18
    § 2552.46.......................................................................................................8
    § 2552.46.......................................................................................................7
19
    § 2552.47.......................................................................................................3
20
California Code of Regulations
21
    Title 2 § 11008 .............................................................................................1

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      This case arises under the Foster Grandparent Program, which provides volunteer

3  mentoring between "grandparents" and incarcerated youth at California Department of

4  Corrections & Rehabilitation's ("CDCR") Juvenile Division.  Plaintiff, a volunteer "grandparent,"

5  disparaged teachers to other staff at N.A. Chaderjian Youth Correctional Facility.  Following

6  three staff complaints, Program Director Defendant Donnie Alexander removed Plaintiff from the

7  program.  Plaintiff now brings a number of employment claims under Title VII and the California

8  Fair Employment and Housing Act ("FEHA") based on her race and sex.  However, Plaintiff's

9  employment claims must be dismissed because Plaintiff was a volunteer, not an employee, of

10  CDCR.  45 C.F.R. § 2552.45 (2009) ["Foster Grandparents are volunteers, and *are not employees*

11  ..."] [Emphasis added].  Neither Title VII or FEHA applies in this case.

12      On February 10, 2016, the Court granted CDCR's FRCP 12(c) Motion to Dismiss finding

13  that Plaintiff was an uncompensated volunteer, not an employee but allowed Plaintiff leave to

14  amend in order for Plaintiff to allege facts showing she received "substantial benefits" pursuant to

15  *Mendoza v. Town of Ross,* 128 Cal.App.4th 625 (2005), *inter alia*.[1]  However, Plaintiff's First

16  Amended Complaint ("FAC") still fails to meet the "substantial benefits" threshold because the

17  FAC merely recites incidental reimbursable costs to the services performed as opposed to

18  "substantial benefits."  Hence, Plaintiff has not alleged sufficient facts to overcome the federal

19  regulation establishing she was a volunteer, not an employee.  45 C.F.R. § 2552.45 (2009).

20  Regardless, as to the California state-law FEHA claim, federal preemption supersedes FEHA's

21  definition of "employee" because defining Foster Grandparents as "employees" is an obstacle to

22  the accomplishment and execution of the objectives of the federal Foster Grandparent Program.

23  Plaintiff's FEHA and Title VII claims can now be dismissed without leave to amend.

24      Finally, Defendants also move to dismiss Plaintiff's defamation claim because it does not

25  meet the elements of either slander or libel, nor has Plaintiff pled around California's conditional

26  privileges.  Regardless, as to Defendant Alexander, Plaintiff failed to file a government tort claim

27  _____

[1] The Court also relied on *Shepard v. Loyola Marymount Univ.* 102 Cal.App.4th 837, 842 (2002), as well as FEHA's regulatory definition of "employee." Cal. Code Regs. tit. 2 §11008.

28

1

1   against him.  Finally, Defendant Alexander should be dismissed from this action entirely

2   because   the breach of contract is pled against CDCR, not Defendant Alexander.  Despite

3   being given a chance to do so, Plaintiff has not pled a viable breach of contract theory

4   against Defendant Alexander.

5   **SUMMARY OF ALLEGED FACTS**

6   I.   **ALLEGATIONS FROM ORIGINAL COMPLAINT FILED ON FEBRUARY 27, 2015**[2]

7        Plaintiff volunteered for many years in the Foster Grandparent Program at N.A.

8   Chaderjian Youth Correctional Facility (the "Facility") near Stockton, California.  Complaint, p.4,

9   ¶14.  In the role of "grandparent," Plaintiff was to provide close interpersonal relationships and

10  increased socialization on the part of youthful offenders; help wards develop socially, emotionally

11  and mentally by listening and understanding their feelings and assist wards to develop better

12  behavior by acting as a role model, *inter alia.  Id.*

13       Plaintiff alleges that on March 20, 2014, Defendant Alexander (the Foster Grandparent

14  Program Director) "breached the agreement that existed" when Defendant Alexander "fired"

15  Plaintiff for making comments which had come to his attention from staff members at the

16  Facility.  Complaint, p.5, ¶16.  Plaintiff alleges that Defendant Alexander subjected Plaintiff to

17  verbal and psychological abuse in her efforts to perform as a Foster Grandparent.  Complaint, p. 6,

18  ¶20(a).  Plaintiff also alleges that Defendant Alexander accused Plaintiff of a deep lack of respect

19  for other members of the staff, teachers within the Facility, other Foster Grandparents and of

20  Alexander.  Complaint, p. 6, ¶20(b).  Plaintiff further claims that Defendant Alexander "had a

21  reputation" for "harassing minority women."  Complaint, p. 10, ¶33.

22  ///

23  ///

24  ///

25  ///

26

27  [2] The allegations from the FAC are almost identical to the Original Complaint filed on February 27, 2015.
    For the convenience of the Court, the new allegations are summarized within Sections II and IV of the Summary of
    Alleged Facts.

28

2

## II.   NEW FACTUAL ALLEGATIONS FROM FEBRUARY 28, 2016 FAC REGARDING THE ALLEGED "EMPLOYMENT" CLAIMS

In order to escape CDCR's Motion to Dismiss based on 45 C.F.R. § 2552.45 (2009) ["Foster Grandparents are volunteers, and *are not employees ...*"], Plaintiff alleges a number of new facts to argue that Plaintiff received "substantial direct and indirect remunerative benefits." However, these alleged benefits are far from "substantial," but, rather, are merely incidental benefits relating to simple cost reimbursements related to the Foster Grandparent services performed by Plaintiff and the other Foster Grandparents.  See 2/10/2016 Court Order following Defendants' Motion to Dismiss pursuant to FRCP 12(c) ["2/10/2016 Order"], 7:22, ["Remuneration need not be a salary, but benefits must be more than merely incidental to the activity performed'"].

For example, in Plaintiff's FAC, Plaintiff recites a list of reimbursable costs provided for the Foster Grandparents starting with stipends.  (FAC 3:7 et seq. & 6:9 et seq.)  Stipends are costs expressly outlined under the Foster Grandparent Program (45 C.F.R. § 2552.46) and the Court already found that stipends are remuneration that cannot form the basis of finding Plaintiff was an employee.  2/10/2016 Order 6:10-12, ("[E]ven if Plaintiff received a stipend, the regulation does not treat that stipend as income for employment benefit purposes; accordingly, treating Plaintiff as an employee for FEHA purposes would lead to an absurd or unreasonable result.")

Plaintiff's FAC further alleges facts describing reimbursements for transportation and meals as well as sick leave, vacation, requests for time off, bereavement leave, administrative time off, leave of absence without pay, holidays and personal and floating holidays.  However, as discussed in more detail below, these benefits are largely reimbursable costs or benefits contemplated within the context of the Foster Grandparent Program.  Because the Foster Grandparent Program expressly mandates that these reimbursements are not treated as income for employment benefit purposes, treating Plaintiff as an employee for FEHA purposes based on these new allegations would similarly lead to an absurd or unreasonable result.  45 C.F.R. § 2552.47; 2/10/2016 Order 6:10-12.

3

Finally, Plaintiff describes the Foster Grandparent Program Orientation Handbook NCYCC (the "Handbook") wherein Program Director Defendant Donnie Alexander allegedly inserted language into it regarding CDCR's policy against Sexual Harassment.  FAC 5:5-26.  Plaintiff goes on to cite a provision of the Handbook which explains a complaint procedure and advises the Foster Grandparents that retaliation for filing a complaint is not tolerated.  The Handbook also explains that "any person" has the right to file a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or the California Department of Fair Employment and Housing ("DFEH").  These provisions clearly were inserted to benefit the Foster Grandparents and to ensure CDCR's compliance with the Foster Grandparent Program's directive that Foster Grandparents be equally treated regardless of protected category.

## III. ALLEGATIONS FROM ORIGINAL COMPLAINT FILED ON FEBRUARY 27, 2015

As to defamation, Plaintiff alleges that "Defendants' termination of plaintiff expressly and implicitly represented to her and other fellow employees that she was not performing her work satisfactorily, was insubordinate and dishonest."  Complaint, p. 12, ¶40.  She further alleges that the harassment, discrimination and "subsequent termination" "on the grounds she did not perform her work satisfactorily was insubordinate and dishonest, was false."  Complaint, p. 12, ¶41.  Finally, Plaintiff alleges that Defendants' conduct required "plaintiff to repeat to other, future employers that she was fired and the reasons therefore."  Complaint, p. 12, ¶43.  Defendants "knew" that Plaintiff would be required to make this disclosure and explain the circumstances of her termination against her will and to her detriment in order to obtain future employment.  *Id.*

## IV. NEW FACTUAL ALLEGATIONS FROM FEBRUARY 28, 2016 FAC PERTAINING TO DEFAMATION

Plaintiff now alleges that "Defendants, and each of them, undertook a course of conduct uttering oral or written communications to third parties regarding false facts about Plaintiff that harmed her in her reputation or goodwill, lowering Plaintiff in the estimation of the community or deterred third parties from associating with Plaintiff and which injured or diminished her esteem, respect, good will, or confidence in the Plaintiff, or to excite derogatory feelings or opinions about the plaintiff including Plaintiff's misconduct as a Foster Grandparent, was subject to

4

1   disciplinary proceedings, was terminated, participated in the theft of funds collected for a social

2   event, was a poor performer as a Foster Grandparent, she had a problem with authority, Plaintiff

3   had a very negative attitude, she was unfit for the position she held." FAC 15:8-17. These are all

4   of the new allegations pertaining to defamation.

5   ## LEGAL STANDARD FOR MOTION TO DISMISS

6   Under Federal Rule of Civil Procedure, subdivision 12(b)(6), a claim may be dismissed

7   for failure to state a claim upon which relief may be granted. While generally on a motion to

8   dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12 (b)(6), all

9   allegations of material fact must be accepted as true and construed in a light most favorable to the

10  plaintiff, that tenet does not apply to threadbare recitals of a cause of action's elements, supported

11  by mere conclusory statements. (*Bell Atlantic Corp v. Twombly (Twombly)*, 550 U.S. 544, 555

12  (2007).) If a court grants a motion to dismiss, leave to amend is properly denied if it is clear that

13  the deficiencies of the complaint cannot be cured by amendment. (*Broughton v. Cutter Labs.*,

14  622 F.2d 458, 460 (9th Cir. 1980).)

15  ## ARGUMENT

16  **I.   PLAINTIFF WAS NOT AN EMPLOYEE FOR PURPOSES OF FEHA OR TITLE VII.**

17  **A.   Because Plaintiff Still Has Not Alleged She Received "Substantial Benefits," Plaintiff's FEHA Claims Must be Dismissed**

18

19  **1.   Plaintiff was an Uncompensated Volunteer**

20  The protections of FEHA apply to all California employees and applicants for

21  employment. Cal. Gov. Code §12940(a); 2 Cal.Code Reg.§11008(b) ["employee" defined].

22  California case law holds that uncompensated volunteers are not considered employees for

23  purposes of FEHA. *Mendoza v. Town of Ross*, 128 Cal.App.4th 625 (2005) (affirming demurrer

24  on plaintiff's FEHA termination claim on the grounds that Plaintiff was a volunteer, not an

25  employee.)

26  While FEHA was amended on January 1, 2015, to apply to unpaid interns, the 2015

27

28

5

1  Amendment ("AB 1443") is not applicable here.[3]  Accordingly, prior to January 1, 2015,

2  volunteers and unpaid interns lacked standing under the FEHA to bring claims.  Here, Plaintiff's

3  alleged claims arose prior January 1, 2015.  2/10/2016 Order 6:1-2 ("…as Plaintiff concedes, the

4  alleged misconduct and termination occurred on March 20, 2014, well before the amendment

5  went into effect on January 1, 2015.")  Thus, Plaintiff has no standing to bring FEHA claims

6  during the time she was a volunteer under the Foster Grandparent Program.

7
8
        **2.**        **Even if AB 1443 were Retroactive (which it is not), Plaintiff's FEHA Claims are Not Viable Because the Foster Grandparent Program Preempts California State Law on the Issue of Whether Plaintiff was an "Employee"**

9

10        Even if AB 1443 were retroactive (which it is not), the Foster Grandparent Program

11  preempts FEHA to the extent a Foster Grandparent were to be considered an employee for FEHA

12  purposes.  That is because state law is preempted to the extent it conflicts with federal law,

13  federal law being the "supreme law of the land."  (U.S. Const. Art. VI.)  Here, "Foster

14  Grandparents are volunteers, and *are not employees* ..."  45 C.F.R. § 2552.45 (2009).

15        The two types of federal preemption applicable here are: conflict preemption and obstacle

16  preemption.  Conflict preemption is found where it is "impossible for a party to comply with both

17  state and federal requirements" or where state law "*stands as an obstacle to the accomplishment*

18  *and execution of the full purposes and objectives of Congress*."  *Freightliner Corp. v. Myrick,* 514

19  U.S. 280 (1995), (emphasis added); *Maryland v. Louisiana,* 451 U.S. 725 (1981).  Obstacle

20  preemption arises when "under the circumstances of a particular case, [the state law] stands as an

21  obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

22  *Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 373.

23        Here, for purposes of conflict or obstacle preemption, the crucial question is whether

24  Congress intended the Foster Grandparent Program statutes and regulations to supersede state law.

25  See *Community Action Program of Evansville v. Veeck,* 756 N.E.2d 1079 (Ind.Ct.App.2001).

26
      [3] *Farias v. Nat'l R.R. Passenger Corp* is a case examining whether AB 1443 should be applied retroactively

27  to cover volunteers and unpaid interns alleging claims for harassment prior to January 1, 2015.  *Farias v. Nat'l R.R. Passenger Corp.,* No. SACV150633DOCAJWX, 2015 WL 4749002, at *6 (C.D. Cal. Aug. 11, 2015).)  After a lengthy discussion, the court found that the Amendment should not be applied retroactively.

28

**MTD PURSUANT TO FRCP 12(b)(6) [Second]** (2:15-cv-01206-MCE-CKD)

1    Accordingly, an understanding of the scope of a preemption statute relies on an understanding of

2    the scope of congressional purpose, as discerned from the language of the preemption state and

3    the statutory framework surrounding it. *Id.* Administrative regulations promulgated pursuant to

4    congressional authorization have the same preemptive effect as federal statutes. *Id.*

5         The Foster Grandparent Program, also known as the Domestic Volunteer Service Act, is a

6    federally-funded program administered by eligible local organizations or sponsors. *See,* 42

7    U.S.C.A §5011. It is essentially a grant of federal funds to CDCR to accomplish the objectives of

8    the program. "The Director is authorized to make grants to or contracts with public and nonprofit

9    private agencies and organizations to pay part or all of the costs of development and operation of

10   projects (including direct payments to individuals serving under this part) designed for the

11   purpose of providing opportunities for low-income persons age 55 or over to provide supportive

12   person-to-person services…to children having special or exceptional needs…" (*Id.*)

13        In *United States v. Connors*, 634 F.Supp. 484 (S.D.Ohio 1985), a case involving the federal

14   Foster Grandparent Program, the district court held that Ohio's policy of deeming foster

15   grandparents "employees" under state workers compensation laws was in conflict with and had

16   been preempted by federal law. Similarly, in *Murray State College v, Akins,* 794 P.2d 1218

17   (Okla.App. 1990), another case involving the federal Foster Grandparent Program, the court

18   reached the same conclusion. The *Connors* court found that the language of 42 USC §5011

19   supported its preemption conclusion relying on legislative history replete with the term

20   "volunteer" (as distinguished from one who is a part of the workforce). The Court also found

21   persuasive the fact that the services of the Foster Grandparents were limited to activities that

22   would not otherwise be performed by employed workers. 42 U.S.C. §5044(a). The *Connors*

23   court concluded that "to consider such volunteers employees is to ignore and to confuse the clear

24   Congressional language that these persons are limited to activities not otherwise performed by

25   employed persons." 42 USC § 5044(a). As further evidence statute's intention, the Foster

26   Grandparent Program statutorily mandates that "grandparents" receive no compensation or

27   wages. 45 C.F.R. §§ 2552.46 and 2552.47 (2009). To the extent FEHA defines Plaintiff as an

28   "employee," California state law is preempted by conflict or obstacle preemption. Given the

7

1    stated purpose of the Foster Grandparent Program, which is to create a mentoring relationship

2    between low-income retirees over age 55 with at-risk or special-needs youth, the entire statutory

3    scheme of the Program would be frustrated, i.e., would "stand as an obstacle to the

4    accomplishment and execution of the full purposes and objectives of Congress," if Plaintiff here

5    were to be subjected to California's heavily regulated employment laws.  As the FAC states,

6    CDCR prohibited sexual harassment or retaliation and encouraged complaints to be made in such

7    case.  However, such remediation must be through the Foster Grandparent Program, not through

8    California's employment laws.

9            **3.    Plaintiff's New Allegations Do Not "Save" her FEHA Claims**

10          Even if the Court declines to invoke federal preemption, Plaintiff's FEHA claims are

11   flawed because the new allegations do not meet the "substantial benefits" threshold.  Plaintiff

12   merely recites incidental reimbursable costs to the services performed as opposed to "substantial

13   benefits."  See 2/10/2016 Court Order following Defendants' Motion to Dismiss pursuant to

14   FRCP 12(c) ["2/10/2016 Order"], 7:22, ["Remuneration need not be a salary, but benefits must be

15   more than merely incidental to the activity performed'"].)  Practically all of the new allegations

16   relate to reimbursement of standard costs to the Foster Grandparents such as transportation and

17   meal reimbursement and sick leave, vacation, requests for time off, bereavement leave, ATO,

18   LOA w/o pay, holidays, personal and floating holidays and workers compensation.  These new

19   allegations should not change the Court's original analysis in its February 10, 2016 Order because

20   the federal statutes and regulations contemplate these types of reimbursements.  45 C.F.R.

21   §2552.46 (Cost reimbursements allowable under the grant include stipends (including "time…for

22   earned leave"), transportation costs, meals and recognition, and "other volunteer expenses."); see

23   also 42 USC § 5044(b) ("All support, including transportation provided to volunteers under this

24   chapter, shall be furnished at the lowest possible costs consistent with the effective operation of

25   volunteer programs.")  Plaintiff's new allegations do not "save" her FEHA claims. The new

26   allegations of "substantial benefits" are merely contemplated cost reimbursements incidental to

27   the volunteer services Plaintiff provided as a Foster Grandparent.

28          ///

**B.     The Title VII Claim Must Also be Dismissed as a Matter of Law**

Title VII applies to current and former employees and applicants for employment.  42 U.S.C. §2000e(f).  Title VII defines "employee" as an individual who is employed by an employer.  Thus, just like the FEHA is inapplicable in this case, Title VII also does not apply here because foster grandparents are volunteers and *not* employees.  45 C.F.R. § 2552.45 (2009) ["Foster Grandparents are volunteers, and are not employees..."]  For the same reasons articulated above, Plaintiff's Title VII claims should be dismissed as a matter of law because Plaintiff has failed to allege "substantial benefits" as required under Title VII law.  See, 2/10/2016 Order, 6:24-8:17.

**II.     PLAINTIFF'S CLAIM FOR DEFAMATION MUST BE DISMISSED AS TO BOTH DEFENDANTS CDCR AND ALEXANDER**

**A.     Plaintiff Still Has Not Pled Defamation Properly**

Under California law, defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Price v. Stossel* 620 F. 3d 992, 998 (9th Cir. 2010), citing *Gilbert v. Sykes,* 147 Cal. App. 4th 13, 53 (2007).  California law requires that "although a plaintiff need not plead the allegedly defamatory statement verbatim, the alleged defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement."  *Care Plus Ins. Marketing v. Connecticut General Life Ins. Co.*, WL 5394772 (E.D. Cal. 2010), citing *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal 2004).

Here, Plaintiff's claim for defamation still fails to state a claim because the alleged facts lack any context by which the alleged defamatory statements were made.  Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement.  (*See Okun v. Superior Court* (1981) 29 Cal.3d 442, 458, (1981) (citations omitted), cert. denied, (1981) 454 U.S. 1099; *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612 n. 5.)

The FAC only sets forth conclusory statements referring to "misconduct," being "subject to disciplinary proceedings," being "terminated," "participat[ing] in the theft of funds collected for a

9

1   social event," being a "poor performer," having "problems with authority," having a "very

2   negative attitude," and "being unfit for her job."  FAC 15:8-17.  However, the FAC does not

3   provide any context by which the statements were allegedly made.  *Okun v. Superior Court* 29

4   Cal.3d at 458 (the "substance of the defamatory statement" must be pled; see also "*Scott v.*

5   *Solano County Health and Social Services Dept.,* 459 F.Supp.2d 959, 973 (E.D. Cal. 2006),

6   ("Under California law, the defamatory statement must be specifically identified, and the plaintiff

7   must plead the substance of the statement.".)  Plaintiff fails to allege *when* the defamation was

8   published, *who* received it, and most importantly, *who published* it.  Furthermore, because none

9   of these facts are pled, Defendants are unable to determine whether the defamation is barred by

10   the statute of limitations or the California Government Tort Claims Act.  Finally, because the

11   FAC lacks the context under which the alleged statements were made, it cannot be determined

12   whether the statements were unprivileged communications.  Cal.Civ. Code 47(c); *Robomatic,*

13   *Inc., v. Vetco Offshore* 225 Cal.App.3d 270, 276 (1990).  For these reasons, the complaint falls

14   short of alleging a cause of action for defamation.  Plaintiff's defamation claim should be

15   dismissed as to both Defendants CDCR and Alexander given Plaintiff's failure to properly allege

16   defamation a second time.

17       **B.    Plaintiff has Not Complied with the Government Tort Claims Act Against
             Defendant Alexander**

18

19       In *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, the California

20   Supreme Court ruled that in suits against public entities and employees, compliance with the

21   claim presentation requirement of the Tort Claims Act is an element of a cause of action.  (*Id*. at

22   1239-1240.)  As such, the "failure to allege facts demonstrating or excusing compliance with the

23   claims presentation requirement subjects a claim against a public entity to a demurrer for failure

24   to state a cause of action."  (*Id*. at 1239.)

25       Here, Plaintiff alleged that she filed her government tort claim against defendants on July

26   23, 2014.  FAC 7:17-19.  However, review of the actual government claim reveals Plaintiff filed

27   her government tort claim against CDCR only, *not* Defendant Alexander.  See, Declaration of

28   Vanessa W. Mott, Exhibit A & Request for Judicial Notice.  Box 16 of the government claim

10

1   form requires Plaintiff to identify the "state agencies or employees against whom this claim is

2   filed." *Id*.  Plaintiff failed to list Defendant Alexander in Box 16.  Instead, her government tort

3   claim alleges that *other* staff members (not Defendant Alexander) made the "utterances" and that

4   Defendant Alexander simply did not investigate the allegations.  Because Plaintiff has not filed a

5   government tort claim against Defendant Alexander and cannot cure her jurisdictional defect,

6   Defendant Alexander should be dismissed with prejudice from Plaintiff's defamation claim.

7   **III.   SECTION 1981 DOES NOT APPLY BECAUSE THERE IS NO CONTRACT BECAUSE
        PLAINTIFF WAS EITHER EMPLOYED VIA STATUTE AS A CALIFORNIA CIVIL
8       SERVANT OR AS A FEDERAL VOLUNTEER ALSO PURSUANT TO STATUTE**

9           If the Court disagrees with Defendants and finds that Plaintiff has properly pled FEHA

10   and Title VII claims, Plaintiff's Section 1981 Claim should be dismissed because employment

11   with the State of California is held by statute and not by contract.  *Kemmerer v. County of Fresno,*

12   200 Cal. App. 3d 1426 (1988).

13          Under 42 U.S.C section 1981, equal protection based on race is guaranteed under federal

14   law with respect to the making, enforcement or impairment of contracts.  42 U.S.C. § 1981(b).

15   Section 1981 prohibits only racial discrimination. 42 USC § 1981(a); *Arnold v. Tiffany* 359

16   F.Supp. 1034, 1035 (C.D. Cal. 1973) aff'd, (9th Cir. 1973) 487 F.2d 216.

17          In 1991 Congress amended 42 U.S.C. section 1981 by adding subdivisions (b) and (c).

18   Subdivision (b) provides that, "[f]or purposes of this Section, the term 'make and enforce

19   contracts' includes making, performance, modification, and termination of contracts, and the

20   enjoying of all benefits, privileges, terms, and conditions of the contractual relationship.'" (42

21   U.S.C. section 1981 subd. (b). This provision of the statute expressly overruled the Supreme

22   Court's narrow interpretation of the statute, stated in *Patterson v. Mclean Credit Union,* 491 U.S.

23   164, 109 S. Ct. 2721 (1989), that the statute protected only an individual's right to equal

24   treatment, based on race, in the formation of contracts, and that section 1981 does not provide a

25   vehicle for enforcing performance under a contract.

26          However, whether a contract right exists that is enforceable under section 1981 is a matter

27   of state law.  *Murray v. National Broadcasting Co.,* 844 F.2d 944 (2d Cir. 1988).  "A plaintiff

28   cannot state a § 1981 claim unless he has (or would have) rights under the existing (or proposed)

1   contract that he wishes 'to make and enforce." *Domino's Pizza, Inc. v. McDonald,* 126 S.Ct.

2   1246, 1246 (2006).  "[I]t is well settled in California that public employment is not held by

3   contract but by statute." *Miller v. State of California,* 18 Cal.3d 808, 813 (1977). "Nor is any

4   vested contractual right conferred on the public employee because he occupies a civil service

5   position since it is equally well settled that '[t]he terms and conditions of civil service

6   employment are fixed by statute and not by contract.'" *Id.* at 813-814; *Valenzuela v. State of*

7   *California,* 194 Cal.App.3d 916, 920 (1987).

8   　　　　Plaintiff's causes of action predicated upon the existence of a contract
9   between him and the County are grounded upon the false premise that he served
    under a contract of employment which included an implied covenant of good faith
10  and fair dealing. However, ". . . it is well settled in California that public employment
    *is not held by contract but by statute* . . . . Nor is any vested contractual right
11  conferred on the public employee because he occupies a civil service position since it
    is equally well settled that '[the] terms and conditions of civil service employment are
12  fixed by statute and not by contract.' *Kemmerer,* 200 Cal.App.3d at 1432; *See also
    Miller v. State of California,* 18 Cal.3d at 808.)

13  Hence, under Plaintiff's theory that she was an employee of Defendant, her Section 1981

14  claims should be dismissed as a matter of law. Alternatively, under Defendants theory that

15  Plaintiff was an unpaid volunteer pursuant to federal Foster Grandparent Program statutes,

16  Plaintiff was similarly retained via statute establishing she was a volunteer.  Hence, Plaintiff's

17  Section 1981 claims fail as a matter of law.

18  　　　Finally, Defendants seek an order limiting Plaintiff's Section 1981 claim to issues related to

19  race.  Section 1981 is not applicable to sex discrimination and Plaintiff may not bring a sex

20  discrimination claim under section 1981.  *Runyon v. McCrary,* 96 S.Ct. 2586, 2592-2593 (1976)

21  (Section 1981 does not prohibit sex or religion discrimination).

22  **IV.   DEFENDANT ALEXANDER SHOULD BE DISMISSED FROM THIS CASE ENTIRELY
         BECAUSE PLAINTIFF'S BREACH OF CONTRACT CLAIM IS AGAINST CDCR, NOT
23       DEFENDANT DONNIE ALEXANDER**

24  　　　In the Court's February 10, 2016 Order, Defendant Donnie Alexander was dismissed from

25  Plaintiff's breach of contract claim.  The Court gave Plaintiff a chance to amend her Complaint to

26  "save her breach of contract claim against Defendant Alexander."  (2/10/2016 Order on Motion to

27  Dismiss, 11:7-8.)  She did not do so.  Instead, Plaintiff continues to allege that the "agreement

28  existed between plaintiff and the state of California."  (FAC 9:16-17.)  Because Plaintiff has not

12

1    alleged that Defendant Alexander was a party to any contract or alleged sufficient facts

2    establishing wrongful inducement of breach of contract, Defendant Alexander should be

3    dismissed from Plaintiff's breach of contract claim.  Given Plaintiff's failure to amend her lawsuit

4    to include a viable contract theory against Defendant Alexander, Defendant Alexander should be

5    dismissed from this lawsuit entirely with prejudice.

6    **CONCLUSION**

7          For the reasons set forth above, Plaintiff's causes of action number two (Discrimination),

8    number three (Sexual Harassment) and number thirteen (Civil Rights Title VII) should be

9    dismissed in their entirety as to both Defendants CDCR and Defendant Donnie Alexander.

10    Plaintiff was an uncompensated volunteer, not an employee, and thus FEHA and Title VII do not

11    apply in this case.  Additionally, Plaintiff's claim of Defamation should be dismissed as a matter

12    of law as to both Defendants for failure to plead defamation either with specificity or otherwise

13    and Plaintiff has not pled facts to show that the conditional privileges under California Civil Code

14    section 47 do not apply.  At a minimum, Defendant Alexander should be dismissed, entirely, from

15    this suit both because Plaintiff failed to file a government tort claim against him and because no

16    viable breach of contract claim has been alleged against him.

17    Dated:  March 17, 2016               Respectfully Submitted,

18

19                                           KAMALA D. HARRIS
Attorney General of California
20                                          SUSAN E. SLAGER
Supervising Deputy Attorney General

21                                          */S/ Vanessa Mott*

22                                          VANESSA W. MOTT
Deputy Attorney General
23                                          *Attorneys for Defendants*
*Department of Corrections &*
24                                          *Rehabilitation*
*and Donnie Alexander*

25    SA2015103543
12181302.doc

26

27

28